CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

Jan. 26, 2017

JULIA C. DUDLEY, CLERK
BY: A. Melvin
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **MELISSA A. TAYLOR,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Action No. 7:15-cv-494 |
| ) | |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

Plaintiff Melissa A. Taylor ("Taylor") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for supplemental security income ("SSI"), and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1383f. Taylor alleges that the Administrative Law Judge ("ALJ") erred by (1) failing to properly consider her mental impairments; (2) finding that her shoulder impairment was non-severe; and (3) improperly evaluating her credibility. I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **RECOMMEND DENYING** Taylor's Motion for Summary Judgment (Dkt. No. 14) and **GRANTING** the Commissioner's Motion for Summary Judgment. (Dkt. No. 16).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Taylor failed to demonstrate that she was disabled

under the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Taylor filed for SSI and DIB on December 30, 2011, claiming that her disability began on June 16, 2011, due to her mental health. R. 128, 329, 358, 362. Taylor's date last insured was December 31, 2015. R. 128.[2] Thus, she must show that her disability began on or before December 31, 2015 and existed for twelve continuous months to receive DIB. 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The state agency denied Taylor's applications at the initial and reconsideration levels of administrative review. R. 182–197, 198–213, 216–233, 234–251. On February 3, 2014, ALJ Thomas W. Erwin held a hearing to consider Taylor's claims for DIB and SSI. R. 147–181. Counsel represented Taylor at the hearing, which included testimony from vocational expert Asheley Wells and medical expert Mary Buban, Psy.D.

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[2] Taylor was born on January 23, 1970, and was 44 years old on the date of the hearing before the ALJ, making her a "younger individual" under the Act. R. 134, 157, 329.

2

On March 27, 2014, the ALJ entered his decision analyzing Taylor's claims under the familiar five-step process[3] and denying her claim for benefits. R. 128–40. The ALJ found that Taylor was insured at the time of the alleged disability onset and that she suffered from the severe impairments of mood disorder / bipolar disorder, anxiety, history of substance use disorder, obesity, asthma / COPD, degenerative disc disease, and knee arthralgia. R. 131. The ALJ determined that these impairments, either individually or in combination did not meet or medically equal a listed impairment. R. 131. The ALJ concluded that Taylor retained the residual functional capacity ("RFC") to perform a limited range of light work. R. 138–39. Specifically, the ALJ found that Taylor can occasionally operate foot controls, climb, balance, stoop, crouch, crawl, and be exposed to extreme cold, wetness, and pulmonary irritants. R. 133. Taylor should never be exposed to hazards or kneeling. Id. Further, Taylor can perform simple, unskilled work with no interaction with the public, and only occasional and superficial interaction with coworkers and supervisors. Id.

The ALJ determined that Taylor was capable of performing her past relevant work as a dietary aide as actually performed. R. 138. The ALJ also determined that Taylor could perform jobs that exist in significant numbers in the national economy, such as assembler, mail routing clerk, and housekeeper. R. 139. Thus, the ALJ concluded that Taylor was not disabled. R. 140.

---

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

Taylor appealed the ALJ's decision and the Appeals Council denied her request for review on August 3, 2015. R. 1–4.

## ANALYSIS

Taylor alleges that the ALJ erred by (1) failing to properly consider her mental impairments; (2) finding that her shoulder impairment was non-severe; and (3) improperly evaluating her pain and credibility.

A. **Medical History**

(1) Mental Health Impairments

Taylor alleges a disability onset date of June 16, 2011, due to her mental health. She self-referred to Blue Ridge Behavioral Healthcare in February 2012, seeking help with anger problems. R. 427. On exam she was fully oriented, cooperative, denied suicidal or homicidal ideation and hallucination, and did not meet the criteria for admission. Id. The providers at Blue Ridge Behavioral Healthcare referred Taylor to New Horizons Healthcare to address her mental health needs. Id. In March 2012, Marvin Gardner Jr., Ph.D. performed a consultative psychological exam. R. 434–41. Dr. Gardner indicated that Taylor likely had "a moderate impairment of her social interactions with both supervisors and co-workers" and that she had a mood disorder R. 436, 438. Dr. Gardner indicated that Taylor could "perform simple and repetitive tasks and maintain regular attendance in the workplace" without special or additional supervision, but should not work with the general public. R. 440. Dr. Gardner diagnosed alcohol dependence, cannabis abuse in remission, mood disorder NOS, intermittent explosive disorder, panic disorder with agoraphobia, provision attention deficit hyperactivity disorder, mild posttraumatic stress disorder, anxiety disorder NOS, cognitive disorder NOS, personality disorder, and normal intellect. R. 440.

In September 2012, Taylor was seen by Tamara Baldwin, MHNP, who originally assessed her with a mood disorder NOS, but later changed her diagnostic assessment to severe mixed bipolar disorder with psychotic features. R. 485–87, 467, 545. Taylor saw Ms. Baldwin on multiple occasions for follow up appointments and medication checks, until July 2013.

Mary Buban, Psy.D., a clinical psychologist, served as a medical expert in Taylor's case, testifying at the hearing before the ALJ. R. 169–76. Dr. Buban testified that Taylor's work restrictions would primarily be in the area of interacting with others, and restricted Taylor to occasional and superficial contact with supervisors and coworkers and no contact with the general public. R. 173–74.

(2) Physical Impairments

Taylor saw Sung-Joon Choo, M.D. for a consultative physical examination in May 2012. Dr. Choo observed that Taylor walked with an unremarkable gait and without assistive device. R. 442, 444. She was independent with her activities of daily living, and did most of the household chores, but no heavy lifting. R. 443. Dr. Choo diagnosed Taylor with degenerative joint disease, and probable underlying lung disease. R. 445. He indicated that her maximum standing capacity was 4-6 hours, with maximum lifting of 40 pounds occasionally and 10 pounds frequently, "with limitations from knee pain." R. 445.

In August 2013, Taylor saw Ayesha Nazli, M.D., complaining of right shoulder pain following an altercation with a friend and handcuffing by the police. R. 713. An MRI in October 2013 showed a rotator cuff tear of Taylor's right shoulder and Cesar J. Bravo, M.D. performed arthroscopic surgery to repair the tear in February 2014. R. 820–25.

(3) Medical Evidence submitted to Appeals Council

5

Taylor also submitted medical evidence to the Appeals Council. In April 2014, Taylor was diagnosed with degenerative arthritis in her left knee joint and genu valgum[4] and received a cortisone injection. R. 104. Also in April 2014, at a follow up appointment from her shoulder surgery, she complained of intermittent numbness, tingling and weakness in her right hand. R. 26. In August 2014, Taylor complained to Dr. Nazli that her knee pain was a 10/10 on the pain scale, and Dr. Nazli assessed osteoarthritis and hypertension. R. 61. In a visit in December 2014, Dr. Kells reviewed x-rays from April, and indicated that Taylor had a bilateral decrease of lateral joint space with osteophytes, particularly left knee. R. 52. Dr. Kells indicated that "total knee replacement is the inevitability of this joint." Id.

Taylor also participated in psychological counseling sessions in April, May, June, July October, November 2014 and was assessed by Patricia Marlowe, LCSW, as having severe mixed bipolar disorder with psychotic features, mood-congruent. R. 8, 13, 64, 68, 71, 79, 83, 95.

### B. Mental Impairments and RFC

Taylor argues that the ALJ erred by failing to properly consider the severity of her mental impairments under SSR 96-8P.[5] See Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996). Taylor also asserts that "simply limiting plaintiff to unskilled work without more is not a proper RFC assessment of plaintiff's mental impairments at Step 4." Pl.'s Br. at 30, Dkt. No. 15. Taylor further argues that the ALJ failed to

---

[4] Genu valgum is commonly known as knock knee. Merriam Webster Medical Dictionary Online, http://www.merriam-webster.com/medical/genu%20valgum (last visited Dec. 2, 2016).

[5] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

include her "mild to moderate limitations in concentration, persistence, or pace" in the hypothetical to the vocational expert. Id. at 31.

SSR 96-8P requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. Teague v. Astrue, No. 1:10-cv-2767, 2011 U.S. Dist. LEXIS 153878, at *23, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P at *7; Meadows v. Astrue, No. 5:11-cv-63, 2012 U.S. Dist. LEXIS 115150, at *24, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15, 2012) (citing Davis v. Astrue, No. 9-cv-2545, 2010 U.S. Dist. LEXIS 132972, at *15-16, 2010 WL 5237850, at *5 (D. Md. Dec. 15, 2010)); Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often).

Here, the ALJ's discussion of Taylor's mental limitations satisfies the requirements of SSR 96-8P. The ALJ considered both medical and non-medical evidence in assessing Taylor's RFC and provided the narrative discussion required by the regulations. The ALJ reviewed the history of Taylor's mental symptoms, and her mental health treatment, including the psychological consultative examination by Dr. Gardner and the testimony of impartial medical expert Dr. Buban, a clinical psychologist, at the hearing. R. 134–35, 137.

The ALJ wrote:

With regard to concentration, persistence or pace, [Taylor] has mild to moderate difficulties. In a consultative examination it was noted [Taylor] gave little effort on her

7

cognitive functioning exam and her recent memory and concentration testing. Therefore, [Taylor's] lack of concentration, persistence and pace is confounded due to lack of effort.

R. 132. In the RFC, the ALJ indicated that Taylor "is able to perform simple unskilled work with no interaction with the public, and only occasional and superficial interaction with coworkers and supervisors." R. 133. The ALJ gave great weight to the opinions of Dr. Buban and Dr. Gardner. R. 137. The ALJ specifically referenced Dr. Buban's testimony at the hearing that Taylor "should be able to perform simple work task that involved only superficial and occasional interactions with supervisor and co-workers but no contact with the general public." R. 134. The ALJ discussed the psychological consultative examination with Dr. Gardner, writing:

> Dr. Gardner opined [Taylor] would be able to perform simple and repetitive tasks and maintain regular attendance in the work place. Dr. Gardner stated that [Taylor's] impairment in concentration is confounded due to a lack of effort and she should have no more than a moderate impairment of concentration, persistence and pace when attempting simple and noncomplex work tasks, which she would be able to perform without special or additional supervision.

R. 134–35. The ALJ emphasized that both Drs. Buban and Gardner believed that Taylor had "an ability to work" and specifically referenced Dr. Gardner's opinion that Taylor would be "able to complete a normal workday or work week without interruptions resulting from her psychiatric condition as long as [she] remains abstinent from substances." R. 135, 137. The ALJ noted that Taylor's mental health treatment notes indicate she has "been compliant with her treatment modalities" and was responding well to her medication and counseling. R. 135.

The ALJ also considered Taylor's testimony as to her daily activities and social interaction, including her claim that "all she does is lie around or sit in the recliner [and] watch TV" and that she suffers from panic attacks and anger issues. R. 134, 138, 167. The ALJ declined to consider this testimony strong evidence in favor of finding Taylor disabled because

8

these daily activities could not be objectively verified and were not supported by the objective medical evidence, or consistent with the paperwork Taylor completed. R. 138. The ALJ also emphasized that Taylor's anger problems have improved with medication and counseling. R. 135, 138.

The ALJ considered the medical opinions, claimant's testimony, and evidence of mental impairment, and explained the basis for his ruling, thus, the court is capable of meaningfully reviewing the RFC. See Taylor v. Astrue, No. 11-cv-32, 2012 U.S. Dist. LEXIS 11307, at *17, 2012 WL 294532, at *6 (D. Md. Jan. 31, 2012) (noting that while SSR 96-8 requires an ALJ to consider the evidence presented on a function-by-function basis, it does not require the ALJ to produce such a detailed statement in writing, but rather is sufficient if it includes a narrative discussion of the claimant's symptoms and medical source opinions); see also Monroe, 826 F.3d at 189 (emphasis added) (quoting Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013)) (finding that "[a] necessary *predicate* to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," including "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.").

Further, Taylor argues that "simply limiting plaintiff to unskilled work without more is not a proper RFC assessment of plaintiff's mental impairments at Step 4." Pl.'s Br. at 30, Dkt. No. 15. Taylor asserts that the ALJ failed to include her "mild to moderate limitations in concentration, persistence, or pace" in the hypothetical to the vocational expert. Id. at 31. In Mascio, the Fourth Circuit held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" 780 F.3d at 638 (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). The Fourth Circuit emphasized the distinction between the ability

9

to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why the claimant's moderate difficulties in concentration, persistence, or pace did not translate into a limitation in the claimant's RFC, it held that without such an explanation, remand was necessary.[6] Id.

This is not a situation like Mascio, where the ALJ summarily concluded that a limitation to simple, unskilled work accounts for the claimant's moderate impairment in concentration, persistence and pace without further analysis. Here, the ALJ accounted for Taylor's mild to moderate impairments in concentration, persistence, and pace in both his hypothetical question to the VE and the RFC finding in his decision.

The ALJ's hypothetical question and RFC assessment limited Taylor to simple unskilled work with no interaction with the public, and only occasional and superficial interaction with coworkers and supervisors. R. 177, 133. Unlike the claimant in Mascio, the medical evidence here supports the ALJ's conclusion that, despite her mild to moderate limitation in concentration, persistence, or pace, Taylor is capable of performing the basic mental demands of unskilled work with no interaction with the public, and only occasional and superficial interaction with coworkers and supervisors. The ALJ emphasized that the opinions of Drs. Buban and Gardner, both who indicated that Taylor could work, are consistent with Taylor's treatment records, as

---

[6] Thus, Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC. 780 F.3d 638. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision, especially where, as the ALJ held in Mascio, a claimant's concentration, persistence, or pace limitation does not affect the ability to perform simple, unskilled work. The ALJ's responsibility to highlight the evidence of record that supports his conclusion was further emphasized recently in Monroe, where the Court of Appeals found that the ALJ must provide a sound basis for his ruling, including discussing what evidence he found credible and "specific application" of the law to the record. See Monroe, 826 F.3d at 189 (emphasis added) (quoting Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013)).

well as Taylor's own reports that she was able to help her daughter get ready for school and do homework, take care of her personal needs, clean, do laundry, use public transportation, go shopping, pay bills, count change and handle a checkbook and savings account. R. 134, 137. Thus, this court is not "left to guess about how the ALJ arrived at his conclusions." Mascio, 780 F.3d at 637; see also Massey v. Colvin, No. 1:13-cv-965, 2015 U.S. Dist. LEXIS 79708, at *20, 2015 WL 3827574, at *7 (M.D.N.C. June 19, 2015); Hutton v. Colvin, No. 2:14-cv-63, 2015 U.S. Dist. LEXIS 77846, at *8, 2015 WL 3757204, at *3 (N.D. W. Va., June 16, 2015).

### C. Shoulder Impairment

Taylor contends that the ALJ erred by failing to find her shoulder impairment severe, arguing that her medical records establish that her shoulder impairment imposed more than minimal limitations on her ability to perform work activities prior to her shoulder surgery, and surgery did not eliminate those limitations. Taylor also argues that the ALJ should have found that she could only occasionally reach in all directions with her right arm and shoulder, which, when combined with her non-exertional limitations, would have eliminated all jobs. Pl's Br. at 35, Dkt. No. 15; R. 179. In support, plaintiff asserts that her medical records, including those submitted to the Appeals Council, document continued shoulder pain post-surgery. Pl's Br. at 34–35; R. 26, 846, 850, 858.

An impairment is non-severe when it causes no significant limitations in the claimant's ability to work. 20 C.F.R. §§ 404.1521(a), 416.921(a). "[A]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (citing Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984)). Additionally, an impairment must

11

last, or be expected to last for a continuous period of at least 12 months to be considered "severe." 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). Taylor bears the burden of proving that her shoulder impairment is severe. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

Further, under 20 C.F.R. § 404.1523, the ALJ must consider the combined effect of all of a claimant's impairments "without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523. "Thus, the issue of whether or not a particular impairment is found severe is only critical if the ALJ finds no severe impairment and ends the analysis at step two; if any impairment is severe, the ALJ must consider all impairments when assessing residual functional capacity." Miller v. Astrue, No. 8:10-1142-HMH-JDA, 2011 WL 1576203, at *15 (D.S.C. Apr. 7, 2011). Consequently, any error by the ALJ at step two is harmless if the ALJ considers the effects of all of Taylor's impairments in the subsequent steps. See Brooks v. Astrue, No. 5:10CV00104, 2012 WL 1022309, at *12 (W.D. Va. Mar. 26, 2012) (citing Miller, 2011 WL 1576203, at *15); see also Gaskins v. Comm'r, No. WDQ–13–1470, 2014 WL 979205, at *5 (D. Md. March 12, 2014); Hammond v. Astrue, No. TMD 11–2922, 2013 WL 822749, at *2 (D. Md. March 5, 2013) (collecting cases). Here, substantial evidence supports the ALJ's conclusion that Taylor's shoulder impairment was non-severe, and indicates that the ALJ did not err by not limiting Taylor to no more than occasional reaching.

The ALJ wrote:

The objective medical evidence documents a recent diagnosis of degenerative disc joint disease of the right shoulder. However, it was diagnosed in November 2013 and she underwent surgery in February 2014. The results of the surgery and the duration of [Taylor's] limitations are unknown. Therefore, the right shoulder degenerative disc disease is considered as a non-severe impairment, as there is insufficient evidence to evaluate its severity, or the duration of any related limitations.

12

Case 7:15-cv-00494-EKD-RSB   Document 19   Filed 01/26/17   Page 12 of 18   Pageid#: 994

R. 131. The ALJ also noted that no treating doctor has placed any restrictions on her, and her treatment has been "generally successful in controlling her symptoms." R. 138. In March 2014, Taylor's shoulder surgeon, Dr. Bravo, found that Taylor's shoulder was stable, and in April 2014, gave her no restrictions. R. 28, 850. Dr. Bravo also indicated in March 2014, that the tendon would take "a total of three months to completely heal" following shoulder surgery and recommended beginning physical therapy immediately. R. 850. Thus, Taylor's shoulder pain first arose in August 2013; if her tendon healed within three months following the February 2014 surgery as estimated by Dr. Bravo, her shoulder issue would have resolved by May 2014.[7] Taylor simply has not meet her burden of establishing that her shoulder impairment is severe, including that it is expected to last for at least 12 months. See 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). Taylor has also not established that she could reach only occasionally, and has pointed to no treating doctors who gave this restriction.

The ALJ's step two analysis is supported by substantial evidence and should not be disturbed. Further, as noted above, even if I find that the ALJ erred in his evaluation of Taylor's impairments at step two, such error would be harmless because the ALJ continued with the sequential evaluation process and considered all of Taylor's impairments, both severe and nonsevere, that significantly impacted her ability to work. R. 131–38. Thus, I find no error on the part of the ALJ in determining Taylor's shoulder impairment non-severe, and not limiting her to no more than occasional reaching.

---

[7] Indeed, the Appeals Council indicated that the medical evidence submitted post-dated the ALJ's decision, writing, "If you want us to consider whether you were disabled after March 27, 2014, you need to apply again." R. 2.

### D. Credibility[8]

Taylor argues that the ALJ's credibility findings are not supported by substantial evidence, and asserts that the "medical evidence of record is obviously not weak." Pl's Br. at 36, Dkt. No. 15. Taylor takes issue with the ALJ's characterization of her as not taking her medications regularly, asserting that a review of the medical records show that "it was only one medication that she was not taking regularly and not all of her various medications." Pl's Br. at 36, Dkt. No. 15; R. 136, 692. Taylor also asserts that the activities cited by the ALJ to support his conclusion that Taylor is less than credible were "very minimal due to her impairment" and not performed on a sustained basis, but rather once a week or once a month. Pl's Br. at 37, Dkt. No. 15. Taylor further argues that the record shows her physical impairments developed after her initial application filing, and thus the negative impact on her credibility from her failure to list any physical impairment when she filed for benefits was unmerited.[9] R. 138. Finally, Taylor

---

[8] I note that in March 2016, the Social Security Administration superseded the language of SSR 96-7P when it ruled in SSR 16-3P that "credibility" is not appropriate terminology to be used in determining benefits. See Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Mar. 16, 2016) (effective March 28, 2016). "[W]e are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. SSR 16-3 at *1. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character." Id. Thus, under SSR 16-3P, the ALJ is no longer tasked with making an overarching credibility determination and instead must assess whether the claimant's subjective symptom statements are consistent with the record as a whole.

Here, SSR 16-3P was issued long after the ALJ's consideration of Taylor's claim, and both the ALJ's opinion and the parties' briefs speak in terms of a "credibility" evaluation. Accordingly, I will analyze the ALJ's decision based on the provisions of SSR 96-7p, which required assessment of the claimant's credibility." See Keefer v. Colvin, No. CV 1:15-4738-SVH, 2016 WL 5539516, at *11 (D.S.C. Sept. 30, 2016); ford v. Colvin, No. 2:15-CV-05088, 2016 WL 5171986, at *5 (S.D.W. Va. Sept. 21, 2016); Hose v. Colvin, No. 1:15CV00662, 2016 WL 1627632, at *5 (M.D.N.C. Apr. 22, 2016); Lopez v. Colvin, No. 3:16CV24 (JAG), 2016 WL 6594107, at *4 (E.D. Va. Oct. 13, 2016) (noting "[t]he Agency does not have the power to engage in retroactive rulemaking").

However, I note that the methodology required by both SSR 16-3P and SSR 96-7P, are quite similar. Under either, the ALJ is required to consider Taylor's report of her own symptoms against the backdrop of the entire case record; in SSR 16-3, this resulted in a "credibility" analysis, in SSR 16-3, this allows the adjudicator to evaluate "consistency."

[9] The transcript from the hearing before the ALJ contains the following exchange:

ALJ: So, when you first filed your application they asked you what your conditions were and you said mental health. At the time you didn't list any physical conditions. Does it –

14

attempts to explain why she sought unemployment benefits, stating she "hope[d] that she would find work she [could] perform with all of the limitations stemming from her physical and mental impairments." Pl's Br. at 37, Dkt. No. 15.

It is for the ALJ to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and her ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Taylor's subjective allegations of her disabling symptoms and impairments are not conclusive on their own; rather, subjective complaints and statements of symptoms, like all other evidence of disability, are considered in the context of the Record as a whole. 20 C.F.R. §§ 404.1529, 416.929 (2014). If a claimant's statements are inconsistent with other evidence, the ALJ may find them less than fully credible and weigh them accordingly. See SSR 96-4P, (July 2, 1996); SSR 96-7P (superseded by SSR 16-3P, (March 28, 2016)).

In this case, the ALJ found that Taylor's statements regarding the severity of her limitations were not wholly credible because they were not supported by objective medical evidence, her treatment history, and her daily activities. R. 137–38. The ALJ's opinion includes a detailed consideration of Taylor's medical history along with Taylor's own allegations. After a review of Taylor's treatment records and allegations of disability, the ALJ stated:

> [I] find that [Taylor's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Taylor's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

R. 21. The ALJ outlined his reasons for this determination, including that Taylor's allegedly limited daily activities cannot be verified, and are not supported by the objective medical evidence, or consistent with Taylor's paperwork regarding her functional limitations and daily

---

Taylor: I know. . . . I think I left – I should have put both of them down.

R. 160.

activities. R. 138. The ALJ emphasized that no treating doctor has placed any restrictions on Taylor. Id. Regarding Taylor's receipt of unemployment benefits, the ALJ wrote:

> [Taylor] received unemployment benefits after she was fired [from her job] and testified that she was looking for work and hoping to get a job. This shows that [Taylor] subjectively believed she could get and maintain work.

R. Id. Thus, at the same time Taylor asserted that she could not work because of her claimed physical and mental impairments, she also declared she was "ready, willing, and able" to work so she could receive unemployment benefits. These divergent claims further support the ALJ's credibility findings. I recognize that in the Fourth Circuit the "receipt of unemployment compensation does not in itself prove ability to work." Lackey v. Celebrezze, 349 F.2d 76, 79 (4th Cir.1965). However, courts of this Circuit have held that it is proper to consider the inherent inconsistency between the receipt of unemployment benefits and an application for Social Security disability benefits when assessing an individual's credibility.[10] Here, the ALJ properly considered the receipt of unemployment benefits as just one of several factors that informed his ultimate assessment of Plaintiff's credibility. See Mabe v. Colvin, No. 4:12-CV-00052, 2013 WL 6055239, at *8 (W.D. Va. Nov. 15, 2013).

A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight).

---

[10] See Propst v. Colvin, No. 5:12cv089, 2013 WL 5348279, at *7 (W.D.Va. Sept. 23, 2013) (noting the "inherent inconsistency between receiving unemployment and applying for disability benefits" and finding "this inconsistency . . . sufficient to support a finding that a claimant is not fully credible"); Shrewsbury v. Astrue, No. 7:11cv229, 2012 WL 2789719, at *3 (W.D.Va. July 9, 2012); Mealy v. Astrue, No. 3:10cv848–HEH, 2012 WL 691580, at *5 (E.D.Va. Feb. 16, 2012), adopted, 2012 WL 688490 (E.D.Va. Mar. 2, 2012); Penick v. Astrue, No. 3:08CV549, 2009 WL 3055446, at *5 (E.D.Va. Sept. 23, 2009).

Further, a reviewing court will defer to the ALJ's credibility finding except in those "exceptional" cases where the determination is unclear, unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all. See Bishop v. Comm'r of Soc. Sec., 583 F. App'x 65, 68 (4th Cir. 2014) (citing Edeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997)).

After a review of the entire record, I find that substantial evidence exists to support the ALJ's determination that Taylor's testimony is only partially credible, and that Taylor is capable of performing work at the level stated in the ALJ's opinion.

## CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case Elizabeth K. Dillon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including the waiver of the right to appeal.

17

Entered: January 25, 2017

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge