IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| MELISSA A. TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:15-cv-00494 |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security,[1] | ) | By: Elizabeth K. Dillon |
| | ) | United States District Judge |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION**

Plaintiff Melissa A. Taylor brought this action for review of defendant Nancy A. Berryhill's (the commissioner's) final decision denying her claims for supplemental security income (SSI) and disability insurance benefits (DIB) under the Social Security Act (the Act). 42 U.S.C. § 405(g) (2012) (authorizing a district court to enter judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security"). The parties filed cross-motions for summary judgment, which the court referred to United States Magistrate Judge Robert S. Ballou for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). In his report, the magistrate judge concluded that substantial evidence supported the commissioner's decision. (Dkt. No. 19.) Taylor timely objected, and the commissioner filed a response to the objections. (Dkt. Nos. 20, 21.) After de novo review of the pertinent portions of the record, the report, and the filings by the parties, in conjunction with applicable law, the court agrees with, and will adopt in full, the magistrate judge's recommendation. Accordingly, defendant's motion for summary judgment will be granted, and plaintiff's motion for summary judgment will be denied.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), she is hereby substituted for Carolyn W. Colvin as defendant.

I. BACKGROUND

The court adopts the recitation of facts and procedural background as set forth in the report. (Report 2–6, Dkt. No. 19.)

II. DISCUSSION

**A. Standard of Review**

This court's review of the administrative law judge's (ALJ) underlying decision is limited. Specifically, "[a] district court's primary function in reviewing an administrative finding of no disability is to determine whether the ALJ's decision was supported by substantial evidence." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence does not require a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 564–65 (1988); rather, it requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This is "more than a mere scintilla of evidence [and] somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

Where, as here, a matter has been referred to a magistrate judge pursuant to 28 U.S.C. § 636(b)(1), this court reviews de novo the portions of the report to which a timely objection has been made. Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."); *United States v. Raddatz*, 447 U.S. 667, 673–74 (1980) (finding that de novo review of the magistrate's report and recommendation comports with due process requirements).

In order for an objection to trigger de novo review, though, it must be made "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007). *See also Page v. Lee*,

337 F.3d 411, 416 n.3 (4th Cir. 2003) ("[P]etitioner's failure to object to the magistrate judge's recommendation with the specificity required by the Rule is, standing alone, a sufficient basis upon which to affirm the judgment of the district court as to this claim."). Further, objections must respond to a specific error in the report and recommendation. *See Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). General or conclusory objections, therefore, are not proper; they are in fact considered the equivalent of a waiver. *Id*. Likewise, an objection that merely repeats the arguments made in the briefs before the magistrate judge is a general objection and is treated as a failure to object. *Moon v. BWX Techs*, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), *aff'd*, 498 F. App'x 268 (4th Cir. 2012) (citing *Veney v. Astrue*, 539 F. Supp. 2d 841, 844–46 (W.D. Va. 2008)).

Taylor raises three objections to the report, and, to a significant degree, they repeat arguments that she made in her brief before the magistrate judge. But she cites to specific portions of the record that she believes refute the report's conclusions, and she specifically addresses statements in the report. Thus, the court will address the objections and apply a de novo standard of review.

**B. ALJ's Decision**

On March 27, 2014, the ALJ entered his decision analyzing Taylor's claim, ultimately concluding that Taylor was ineligible for benefits. In reaching his decision, the ALJ followed the five-step process found in 20 C.F.R. § 404.1520 (2016). The five-step evaluation asks the following questions, in order: (1) whether the claimant is working or participating in substantial gainful activity; (2) whether the claimant has a severe impairment of the duration required by 20 C.F.R. § 404.1509; (3) whether she has a type of impairment whose type, severity, and duration meets the requirements listed in the statute; (4) whether she can perform her past work, and if

3

not, what her residual functional capacity (RFC) is; and (5) whether work exists for the RFC assessed to the claimant. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the commissioner to establish that the claimant maintains the RFC, considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A).

In this case, Taylor was not working at the time she applied for benefits or afterward. At step two, the ALJ found that Taylor suffered from the severe impairments of mood disorder/bipolar disorder, anxiety, history of substance use disorder, obesity, asthma/COPD, degenerative disc disease, and knee arthralgia. (ALJ Decision, Administrative Record (R.) 131, Dkt. No. 9-1.) He also considered and rejected her contention that her problems with her right shoulder constituted a severe impairment. (*Id.*) The ALJ then found that Taylor's impairments did not meet or medically equal any listed impairments. (*Id.*) In doing so, he considered her severe impairments as well as her moderate limitation in social functioning, mild restriction in activities of daily living, and mild to moderate limitation in maintaining concentration, persistence, and pace. (*Id*. at 132.)

The ALJ then evaluated Taylor's RFC, considering all of her impairments. He concluded that she had the RFC to perform light work except that she should never be exposed to hazards or kneeling. She could occasionally operate foot controls, climb, balance, stoop, crouch, and crawl, and should have no more than occasional exposure to extreme cold, wetness, and pulmonary irritants. He also limited her to simple unskilled work with no interaction with the public, and only occasional and superficial interaction with coworkers and supervisors. (*Id.* at 133.) Based on this RFC, the ALJ determined that Taylor is capable of performing past relevant work as a

dietary aide, as actually performed at the unskilled light level of exertion. (*Id.* at 138.) The ALJ also made the alternative finding for step five that Taylor is also capable of performing other jobs that exist in the national economy at the unskilled light level of exertion, such as assembler, mail routing clerk, and housekeeper. (*Id.* at 139.) He therefore concluded that she was not eligible for benefits. (*Id.* at 140.) In his report, the magistrate judge concluded that substantial evidence supported the ALJ's decision "in all respects." (Report 1.)

## C. Taylor's Objections

Taylor raises three objections to the magistrate judge's report. First, she argues that the report erroneously concluded that the ALJ's discussion of plaintiff's mental limitations was sufficient. She contends that the ALJ failed to adequately evaluate her mental impairments under Social Security Ruling (SSR) 96-8p and, in particular, failed to properly evaluate her impairment in concentration, persistence, and pace. Taylor's second objection pertains to her right shoulder pain and subsequent surgery. She claims that the ALJ erred in determining that the shoulder impairment is non-severe and erred in not limiting her to no more than occasional reaching, and that the report should have identified those errors. Third, she claims that the report erroneously concluded that the ALJ's credibility findings are supported by substantial evidence. The court addresses each objection in turn.

### 1. The magistrate judge correctly found that substantial evidence supported the ALJ's evaluation of Taylor's limitations in concentration, persistence, and pace.

Taylor's first objection is that the report erred in concluding "that the ALJ's findings adequately evaluated plaintiff's moderate limitations in concentration, persistence[,] and pace because Dr. Gardner and Dr. Buban opined plaintiff can perform simple tasks." (Pl.'s Obj. 2, Dkt. No. 20.) She argues that the ability to perform simple tasks is different from the ability to stay on task and that the ALJ's hypothetical question and heavy reliance on the two physicians

5

who said she could perform simple work is not the same as the ability to stay on task. (*Id.* at 2–3.) She also argues that the opinions of Dr. Gardner and the two state agency physicians were at least a year old (and in some cases two years old) and plaintiff submitted medical evidence showing significant changes in her impairments subsequent to those opinions. (*Id.* at 3.) In short, she argues—as she did before the magistrate judge—that the ALJ did not properly evaluate her mental impairments under SSR 96-8p. (*Id.* at 5.) Her first objection is not well-founded.

As to her contention that the ALJ did not follow SSR 96-8p, that ruling "requires that the RFC assessment 'include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence (e.g., daily activities, observations).'" *St. Clair v. Colvin*, No. 7:13-cv-571, 2015 WL 5310777, at *14 (W.D. Va. Sept. 11, 2015) (quoting SSR 96-8p, at *7). Upon review of the ALJ's decision and for all of the reasons discussed at length by the magistrate judge (Report 6–11), the court agrees with the magistrate judge that "the ALJ's discussion of Taylor's mental limitations satisfies the requirements of SSR 96-8p." (*Id.* at 7).

In support of her first objection, Taylor also points to *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015). In *Mascio*, the court acknowledged that "the ability to perform simple tasks differs from the ability to stay on task," and held that remand was required because the ALJ did not either include a limitation in concentration, persistence, or pace in his hypothetical or explain why such a limitation did not affect the claimant's RFC. *Id.* at 638. In *Mascio*, however, the ALJ failed to give any explanation at all and therefore remand to the Agency was required. *Id.* That is not the case here.

6

Case 7:15-cv-00494-EKD-RSB   Document 22   Filed 03/16/17   Page 6 of 13   Pageid#: 1026

As the magistrate judge recognized (Report 10), the ALJ's decision here differs materially from the decision in *Mascio*. Here, the ALJ set forth a very detailed, claimant-specific analysis. The ALJ's hypothetical question (and his subsequent RFC) limited Taylor not just to simple unskilled work, but to simple unskilled work with no interaction with the public, and only occasional and superficial interaction with coworkers and supervisors. (R. 133.) These limitations were based on ample medical evidence. And as explained by the magistrate judge, the medical evidence here supports the RFC—and the decision not to include any additional limitations related to concentration, persistence, or pace—and the ALJ explained in detail how he arrived at the RFC. In particular, the ALJ emphasized and gave "great weight" to the opinions of Dr. Gardner, a psychologist, who performed a psychological consultative examination, and the testimony of the impartial medical expert, Dr. Buban, which supported his RFC.[2] Buban and Gardner both indicated that Taylor could work. Buban said Taylor should be able to perform simple work tasks that involved only superficial and occasional interactions with supervisors and co-workers but no contact with the general public, restrictions the ALJ incorporated into the RFC. Buban specifically noted that these additional restrictions were intended to account for all of Taylor's mental impairments. Gardner, too, opined that plaintiff had an ability to work with certain limitations. The report also explained that the ALJ considered Taylor's treatment records and her own report about her activities of daily living. (Report 10–11.)

As noted, Taylor also argues that the opinions of the state agency physicians and Dr. Gardner were not based on the most updated medical evidence. She contends that, after Dr. Gardner issued his opinion, there are treatment notes saying her anxiety and depression were

---

[2] The ALJ gave significant weight to the state agency consultants, but gave great weight to Buban and Gardner's opinions. (R. 137.)

7

worsening and, in December 2012, she was diagnosed with severe mixed bipolar disorder with psychotic features. (Pl.'s Obj. 3 (citing R. 460, 462, 468).) In addition, she was found to need mental health services to help with handling activities of daily living. (*Id.* (citing R. 634).)

The court will overrule this objection for two basic reasons. First, the ALJ expressly stated that he "considered the updated medical records" received since the state agency consultants offered their opinions, but noted that "there is no new evidence that shows the claimant is unable to perform unskilled light work." (R. 137.) He also discounted and gave "little weight" to the opinion of "Ms. Ingram, the claimant's skill building clinician with East Mental Health, who opined that [Taylor] had a major impairment in several areas" and had a low GAF score of 35. *Id.* He noted that those opinions were inconsistent with the treatment notes in the medical evidence, and he also noted that Taylor had not decompensated nor undergone any inpatient psychological treatment. As to her needing help with activities of daily living, he noted Taylor's own testimony that she is able to get public transportation to get where she needs to go. (*Id.*) So the ALJ considered the additional evidence and discussed it in his narrative, and the court cannot say that the RFC is not supported by substantial evidence in the record.

Second—and significantly—neither the age of the medical opinions nor the new medical evidence that she presented would appear to affect Dr. Buban's opinion at all. Dr. Buban's opinion was offered at the 2014 hearing and included a review of mental health evidence at least through May 2013. Notably, the ALJ included the exact limitations Dr. Buban opined that Taylor needed. So, the fact that plaintiff points to nothing to undermine Dr. Buban's opinion is significant and shows that there is substantial evidence in the record to support the ALJ's determination of the RFC.

For the foregoing reasons, Taylor's first objection is overruled.

8

Case 7:15-cv-00494-EKD-RSB   Document 22   Filed 03/16/17   Page 8 of 13   Pageid#: 1028

## 2. The magistrate judge correctly found that the ALJ did not err in treating Taylor's shoulder impairment as non-severe and in not limiting her RFC to only occasional reaching.

As noted, the ALJ did not find Taylor's shoulder impairment to be severe, and the RFC as determined by the ALJ did not include any limitation on reaching. The report determined that substantial evidence supported this decision. Taylor objects, claiming that she should have been limited to only occasional reaching based on the diagnosis of degenerative joint disease of her right shoulder. She was given that diagnosis in November 2013, and she underwent surgery to correct it in February 2014. The ALJ reviewed the medical evidence available to him related to her shoulder, but ultimately concluded that it was not a severe impairment, reasoning that "[t]he results of the surgery and the duration of the claimant's limitations are unknown. Therefore, the right shoulder degenerative disc disease is considered as a non-severe impairment, as there is insufficient evidence to evaluate its severity, or the duration of any related limitations." (R. 131.)

After the ALJ's decision, Taylor submitted additional medical records concerning her shoulder to the Appeals Council, and she contended before the magistrate judge—and contends again now—that those documents reflect continued shoulder pain post-surgery. (*See* Pl.'s Br. 34–35 (citing R. 26, 846, 850, 858); Pl.'s Obj. 6–7 (citing R. 26, 850).)[3] She thus claims that there was sufficient information before the commissioner to show that her shoulder impairment was severe and that the ALJ should have restricted her to no more than occasional lifting as part of her RFC.

---

[3] Record pages 846, 850, and 858 all reference shoulder pain within approximately one month of the surgery, well within the three-month window predicted by her surgeon for complete healing to occur. Record page 26 is a treatment record dated April 30, 2014. On that date, Taylor reported "intermittent numbness and tingling in the right hand that is worse at night and in the mornings" and some weakness in her hand. (R. 26). She also reported that she had not "started her therapy" until the prior week, and so she had not had the entirety of the physical therapy ordered for her at that time. Moreover, that date was still within the three-month window post-surgery.

9

The report disagreed, finding instead that substantial evidence supported the ALJ's determination that her shoulder impairment was not severe. (Report 11–13.) The report noted that, in order to be severe, an impairment must cause significant limitations in the claimant's ability to work and must also be expected to last for a continuous period of at least 12 months. (*Id.* at 12 (citing 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 404.1521(a), 416.921(a)).) The report pointed out the ALJ's reasoning that no treating doctor had placed any restrictions on her and that her treatment has been "generally successful in controlling her symptoms." (R. 138.) Moreover, in March 2014, her shoulder surgeon found her shoulder was "stable," and he gave her no work restrictions in April 2014. (R. 28, 850.) He also indicated in March 2014 that it would take a total of "three months to completely heal" from the date of surgery. (R. 850.) Based on this, the report reasoned that the impairment was not expected to last for at least 12 months, since it should be healed by then.

It is true that the record shows plaintiff was still undergoing physical therapy in May 2014 (R. 26), which is within the three-month window for complete healing after the February 2014 surgery. But it is also true, as the ALJ and the report both noted, that no treating doctor had restricted her from working or limited her ability to reach and that she had not established that she could reach only occasionally. Moreover, the report did not state, as Taylor suggests, that the shoulder *had* resolved by May of 2014, only that it *would have* based on her doctor's statements,[4] and she did not show any evidence that her shoulder significantly impacted her ability to work for at least twelve months.

---

[4] The report explains: "Taylor's shoulder pain first arose in August 2013; if her tendon healed within three months following the February 2014 surgery as estimated by Dr. Bravo, her shoulder issue would have resolved by May 2014. Taylor simply has not [met] her burden of establishing that her shoulder impairment is severe, including that it is expected to last for at least 12 months." (Report 13.)

10

The report also reasoned that, even if it was an error to find that the shoulder was not a severe impairment, that error would be harmless because the ALJ considered all of Taylor's impairments, both severe and nonsevere, that significantly impacted her ability to work. (Report 13.) Plaintiff did not object to that alternative finding, and the court does not find clear error in the magistrate judge's conclusion on this point. So, that is an alternative ground on which the commissioner's decision could be upheld. Taylor's second objection is overruled.

### 3. The magistrate judge correctly found that substantial evidence supports the ALJ's finding that Taylor's complaints were not consistent with the evidence.

Lastly, Taylor objects to the magistrate judge's conclusion that substantial evidence supports the ALJ's credibility findings. She argues that her receipt of unemployment benefits does not undermine her credibility because unemployment benefits do not distinguish between full time and part time work. It is not inconsistent, her argument continues, to state both that she wanted to and was capable of working part time in order to obtain unemployment benefits, and that she was precluded from substantial gainful activity, which requires full-time work. (Objs. 7.) Similarly, she argues that the ALJ erred in relying on her daily activities as undermining her credibility because those daily activities were not performed daily on a sustained basis like substantial gainful work activity must be performed. (Objs. 8.) Finally, she claims that the ALJ erred in concluding that her credibility was undermined by the fact that she did not list her physical impairments in her application. She claims that, in fact, the impairments did not arise until after she had filed her claim, and thus her failure to list them could not support the ALJ's finding on credibility.

Taking these arguments in reverse order, the court acknowledges that Taylor cites to a function form in which she stated that her physical impairments arose after she had filed her claim for benefits. (Pl.'s Obj. 8 (citing R. 406).) But as the magistrate judge cited in his report,

11

Taylor's sworn testimony before the ALJ suggested that her physical impairments existed at the time she filed her claim. Specifically, when the ALJ pointed out that she had listed only mental impairments on her claim for benefits, but no physical conditions, she responded, "I know. . . . I think I left – I should have put both of them [the back and knees] down." (R. 160; Report at 14–15 n.9.) Thus, at the very least there is a dispute about whether those conditions existed before she filed her claim or not. The court cannot say the ALJ's decision to consider that inconsistency was error.

As to the other two assertions, both are objections that effectively ask the court to resolve inconsistencies between the claimant's testimony and the evidence of her ability to work. That is the province of the ALJ, and it is inappropriate for either the magistrate judge or this court to interfere with the determination of credibility. Credibility determinations are emphatically the province of the ALJ, not the court, and courts normally should not interfere with these determinations. SSR 96-4p (1996).[5] *See, e.g.*, *Chafin v. Shalala*, No. 92-1847, 1993 WL 329980, at *2 (4th Cir. Aug. 31, 1993) (per curiam) ("It is not the proper province of the courts to second-guess the ALJ's credibility determinations.") (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964)).

Additionally, as to her receipt of unemployment benefits, the report correctly noted that, although it is not dispositive, this court and others have concluded that an ALJ may consider, as part of his or her credibility analysis, the inherent inconsistency of a claimant's receipt of

---

[5] In March 2016, the Social Security Administration superseded the language of SSR 96-7P when it ruled in SSR 16-3P that "credibility" is not appropriate terminology to be used in determining benefits. "[W]e are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character." Soc. Sec. Ruling 16-3p; Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Mar. 16, 2016). The older ruling was still in effect at the time of the ALJ's decision, and neither party has challenged its application here. In any event, as the magistrate judge noted, the methodology required by both rulings is similar and requires the ALJ to consider the claimant's report of her own symptoms against the backdrop of the entire case record. (Report 14 n.8.) That is, the updated guidance still reflects that it is the ALJ's province to determine whether a claimant's subjective complaints are supported by the medical evidence.

12

Case 7:15-cv-00494-EKD-RSB   Document 22   Filed 03/16/17   Page 12 of 13   Pageid#: 1032

unemployment benefits while claiming disability. (Report at 16 & n.10 (collecting authority).) The court overrules Taylor's objections as to the report's treatment of the ALJ's findings and conclusions about Taylor's credibility.

### III. CONCLUSION

After a de novo review of the record, this court finds that the ALJ's decision is supported by substantial evidence and that the ALJ applied the correct legal standards. Accordingly, this court will overrule Taylor's objections and adopt the magistrate judge's report and recommendation in full. The court will therefore grant the commissioner's motion for summary judgment and deny Taylor's motion for summary judgment.

An appropriate order will be entered.

Entered: March 16, 2017.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge